## SOBRINOS DE PORTILLA *v.* QUIÑONES.

APELACIÓN procedente de la Corte de Distrito de San Juan.

No. 47.—Resuelto en marzo 7, 1904.

OBLIGACIONES.—Producida una cuenta perfectamente detallada, con los cargos expresados partida por partida, así como los abonos, devoluciones y rebajas hay que impugnar específicamente sus partidas, y no por medio de alegaciones vagas, y señalar concretamente las equivocaciones o engaños cometidos en la misma.

ID.—MORA—INTERESES.—Incurren en mora los obligados a entregar o hacer alguna cosa, desde que se les exija judicial o extrajudicialmente el cumplimiento de su obligación y vienen obligados por ello al pago de los intereses convenidos, o a falta de convenio, al del interés legal.

EXPOSICIÓN DEL CASO.

En el juicio seguido ante el Tribunal de Distrito de San Juan, entre partes, de la una Sobrinos de Portilla, como demandante al que han representado ante esta Corte Suprema, sucesivamente, los Letrados Don Hilario Cuevillas y Don Jacinto Texidor, y de la otra Don Nicolás Quiñones Cabezudo, como demandado, bajo la representación y dirección del Letrado Don Rafael López Landrón, sobre cobro de pesos, cuyo juicio pende ante nos a virtud del recurso de apelación interpuesto por Nicolás Quiñones Cabezudo, contra la sentencia dictada por el referido tribunal, que copiada literalmente dice así:

"*Sentencia.* En la ciudad de San Juan de Puerto Rico a los cuatro días del mes de abril de 1903. Vistos en juicio oral y público estos autos declarativos seguidos por el Licenciado Don Hilario Cuevillas Hernández, en representación de la sociedad industrial de esta plaza, Sobrinos de Portilla, como demandante, contra Don Nicolás Quiñones Cabezudo, hacendado, vecino de Caguas, dirigido y representado por el Letrado Don Rafael López Landrón, en cobro de pesos.

"1. *Resultando:* que en febrero 2 de 1897 y firmada por Quiñonez Cabezudo, fué dirigida a Sobrinos de Portilla una carta que

dice: 'Reposa en nuestro poder la apreciable de usted del 31 del (*) mes pasado. De los efectos correspondientes al borderó que indican, resulta con precio exagerado la llave que anotan en cinco pesos, por lo cual espero limiten más su importe. Ocupado en la revisión de las cuentas con esa respetable casa, me cuidaré, al terminar la operación, de ver en qué forma puedo atender a la remisión de fondos, puesto que para ello aguardo el resultado de inspección'; en septiembre 26 de 1898, otra que dice: 'Correspondo a sus anteriores manifestándoles que hasta el próximo mes de enero, en que dé principió a la zafra, no podré pasar a esa al arreglo y liquidación de nuestra cuenta. En la actualidad no hay azúcar ni dinero de qué disponer. Infinidad de reparaciones que necesitan las máquinas, no las hago hoy, por falta de dinero de que disponer. Sírvanse tener paciencia,' continuando algo ininteligible; otra de febrero 18 de 1898, que dice: 'Con el portador Don José Ríos remito a usted un giro a su favor contra Don Antonio Molina por la suma de $200 m/c. El mismo Ríos, quizás, le anote algunos artículos siempre que convengan en precio. Cuando publiquen las relaciones de precios que anualmente acostumbran, les estimaré me envíen una para gobierno. Deseo un extracto de cuenta corriente, con el fin de ver si estamos de conformidad'; otra de mayo de 1897, que expresa acompaña un giro por $400 m/c. que le abonarán en cuenta; y otra de 21 de mayo de 1898, manifestando que al cesar las múltiples ocupaciones examinará la cuenta, que no hay quien compre azúcar, con ese motivo están los hacendados sin recursos, y que la bomba aleatoria pequeña número 1 les fué devuelta.

''2. *Resultando:* que acompañando dichas cartas, Sobrinos de Portilla formuló demanda en 13 de agosto de 1900, pidiendo se condene a Don Nicolás Quiñones Cabezudo al pago de $1,652.43 moneda provincial, o su equivalente, americana, intereses legales desde la demanda y en las costas, sentando como hechos: que el demandado estaba en relaciones con el demandante, quien le vendía efectos de herrería y le hacía trabajos para la hacienda, como así lo declara el primer asiento de la cuenta que presenta y fué pasada a Quiñones; que esa cuenta corriente continuó, remitiéndole Portilla de tiempo en tiempo un extracto de ella y enviándole, o no, Quiñones, cantidades inferiores al saldo, sin expresar su conformidad, y si se le exigía, se excusaba con no tener tiempo para el examen, poniendo término Portilla a esa situación, exigiendo lo debido, y citando, como

454

fundamentos de derecho, los artículos 1100, 1101, 1108 y 1901 del Código Civil. (*)

"3. *Resultando:* que el demandado contestó pidiendo se le absuelva y estableciendo reconvención para que se condenase al actor a producir una cuenta corriente completa y general comprobada, con las costas al demandante; exponiendo como hechos: que desde 1889 Portilla y Quiñones sostienen cuenta corriente entre sí, tomando el actor a su cargo proveer al demandado de efectos de herrería, útiles de maquinarias agrícolas, accessorios y reparaciones mecánicas de la finca, a cambio de abonos en efectivo, por cuenta de aquéllos; que continuaron los cargos y abonos, remitiendo el extracto de su cuenta a Quiñones, no la cuenta detallada, bastándole que el actor no despachara nada sin su orden; que al recibir las cuentas nunca dejaba de anunciar reparos, reclamando contra el precio exagerado de alguna partida, previniendo moderación de valores, defectos de construcción, deducción de partidas o artículos devueltos, encabezadas las cuentas con saldos importantes; que el demandado les pidió produjeran la cuenta desde su origen y nunca pudo obtenerlo; que encargó varias coronas para las mazas del molino, las remitieron y no fué posible utilizarlas, devolvió varias de esa coronas y exigió se le descargase su importe de la cuenta sin conseguirlo; que en 1896 envió a Portilla una maza para acuñar y ajustar el eje, la repararon y al recibirla Quiñones, la montó y al segundo día de molienda se corrió el eje de su sitio, perdiéndose la caña cortada; que en otra ocasión encargó una bomba de vapor, se recibió y colocada a los seis u ocho meses de funcionamiento regular, dejó de aspirar e impulsar las vinazas, siendo preciso desarmarla y advirtiéndose entonces que en su interior estaba revestido de hierro y no de bronce; y que fué otro fracaso una maza nueva con su eje; sentando como puntos de derechos los artículos 1103 al 1106, 1254, 1258 y 1972.

"4. *Resultando:* que el demandante contestó la reconvención solicitando se declare sin lugar, con las costas al demandado, alegando como hechos: no ser exacto consintiera Portilla en llevar cuenta corriente con Quiñones, ni en hacer nada de lo que dice y sí que tomaba del establecimiento lo que necesitaba, encargó trabajos, ofreció pagar y no pagó cumplidamente; que al comprar efectos se remitía un borderó que los comprendía todos, con sus precios, no siendo exacto se enviaren extratos de cuentas; que no hubo reclamaciones (*) y sí excusas para no pagar, existiendo conformidad con las cuentas, pues en 2 de febrero de 1897 dijo las estaba inspeccionando

y después en 18 de febrero y 7 de marzo remitió fondos; que alegar mala construcción, trastornos, etc., de nada sirve, porque ningún fabricante responde de montura que no hace, y porque en 18 de febrero de 1898 remitió $200 y en 7 de marzo de 1897, $400, a cuenta, y que presentada una cuenta con carga y data ascendente a $1,652.43 debe reparar y fijar valor a los reparos, invocando como fundamentos de derecho los artículos 547 y 548 de la Ley de Enjuiciamiento Civil; que nadie puede ir contra sus propios actos, pues todo el que recibe una cuenta debe aceptarla, rechazarla o repararla y no hacer pagos a cuenta y dejar pasar tres años sin pagar el saldo.

"5. *Resultando:* que abierto a prueba el juicio, de las del actor aparecen reconocidas por el demandado las cartas producidas con el escrito de pruebas obrantes de folios 38 al 53 de los autos, pareciéndoles firmadas por Don Zoilo Giménez, por su orden las que por éste están suscritas, en cuyas cartas constan los pedidos que en ella se hacen de los efectos que cada una refiere, entre ellas la de 11 de marzo de 1895, que dice: 'Me extraña, pero me extraña mucho, que no admitiesen los 1,000 pesos como saldo de los 1,275 pesos 98 centavos, pues así fué convenido con Don José. Si éste no tenía facultades para esta transacción, no haberla hecho. La rebaja no es tan grande, pues en esta cantidad entran 72 pies de correas y otras reclamaciones que desde hace mucho tiempo he venido haciendo, así como la reclamación de una corona que les devolví por defectos de fábrica, quiere decir, que por la transacción queda todo arreglado;' la de 28 de enero de 1898 que dice: 'Dentro de pocos días enviaré alguna azúcar a la capital y daré orden a don Antonio Molina de hacerle el mayor abono posible;' conteniendo la de 18 de enero de 1899, que la zafra comenzará en breve y para los demás particulares se servirán entenderse con su apoderado general, el Procurador Don Rafael Arce; la cuenta de 22 de septiembre de 1900 de lo que adeuda al actor el demandado, detallada partida por partida, desde enero 17 de 1895, en la que constan los abonos, devoluciones de efectos y rebajas, notándose un abono de $300 en 13 de julio de 1896, otro en mayo 21 de 1897, por $400, y otro en 26 de febrero de 1898, por $200, siendo los pedidos posteriores a este último abono, de efectos cuyo valor suma $76.30 y balanceada la (*) cuenta en diciembre de 1896, arrojó un debe por $2,577.84, con abonos y rebajas, valor $670.25, pasando en diciembre de 1896 un saldo al debe por $1,907.59, que con pedidos, subió nuevamente, en 26 de febrero de 1898, a $2,288.29,

que deducidos $635.86, de rebajas y abonos, arroja el saldo de $1,652.43.

"6. *Resultando:* que como de prueba del actor, la confesión del demandado, expresando nunca ha hecho convenio con Portilla; que para terminar y transar y no ocuparse más del asunto, ofreció a dichos señores una cantidad que ordenó pagara Don Antonio Molina, reservándose él el derecho de reclamar luego, si tenía motivo para ello; que en aquella época entendía no adeudar nada, pero necesitaba le hiciera un trabajo la casa y para evitar pérdidas en la hacienda creyó que 1,000 pesos no arruinaban a un hacendado y mandó pagarlos; que no puede precisar si los pagaron porque se entendía en eso su comisionista; que Don Zoilo Giménez era azucarero de su hacienda, que hoy no tiene ésta, administrándola Don Ramón Quiñones Cabezudo; que nunca ajustó que de casa de Portilla fueran a montar las piezas a la finca, haciendo las monturas bajo la dirección de Don Federico Brover, reconocido como ingeniero mecánico; que ha recibido todas las cuentas de Portilla y las entregó, bien al juzgado o al Sr. López Landrón, según cree, no pudiendo asegurar que las presentadas por el Sr. López Landrón agregadas a los autos que se le ponen de manifiesto, sean las mismas que estuvieron en su poder.

"7. *Resultando:* que cotejada la cuenta de lo adeudado por el demandado al actor, con los libros de éste, resulta que todas las partidas se encuentran debidamente anotadas en los libros diario y de cuentas corrientes, sin que exista equivocación, estando los libros sellados y legalizados; que requerido el demandado para presentar las cuentas y documentos recibidos de Portilla, manifestó se dirigieran a su abogado para que los presentara, y éste lo efectuó en 16 de agosto, con la producida a 23 de enero de 1895, y abarca desde el 15 de enero de 1894 y termina con un saldo a favor de Portilla de $1,249.49, siendo todas las demás producidas anteriores, desde 1888 a dicha fecha, excepción de la que empieza en 20 de diciembre de 1896 y termina en 26 de febrero de 1898, con el saldo que se cobra en esta demanda, de la que se ha hecho referencia en el resultando anterior, y en cuya cuenta aparecen los abonos y rebajas que en total suman $635.86.(*)

"8. *Resultando:* que los peritos declararon que las fundiciones y establecimientos de ventas de piezas mecánicas, no responden de defectos internos de dichas piezas, a no ser que la cláusula del contrato les obligue a ello; que eso ocurre porque aun las piezas mejor

y con todo esmero·fundidas, suelen tener defectos que no se pueden evitar ni se pueden conocer; que tampoco se obligan a garantir el resultado de la maquinaria que se venda si no hacen ellos el montaje, porque el descuidado e imperito produce mal funcionamiento y la rotura de la misma máquina.

"9. *Resultando:* de la prueba del demandado la confesión del actor contestando que las cuentas anteriores se cerraron en 1894 con los 1,000 pesos que abonó Quiñones y del 1895 al 1899 es cuenta nueva; que en la cuenta del 94 antes de cerrarla, se hicieron por el demandado reclamaciones, por lo cual se rebajó en aquella cuenta; que Quiñones Cabezudo ha reconocido la cuenta, pues están las cartas, y siempre que recibía efectos, contestaba y que el saldo fué arreglado con un individuo que dice el actor envió a Caguas a ese fin; requeridos Ochoa Hermanos exhibieron el asiento del libro en que consta que el 2 de octubre de 1893, dice: 'Nicolás Quiñones. Por gastos de 1c. maquinaria recibida de s/c por v. *Olinde Rodríguez* de 5 del actual'; informe de Sobrinos de Ezquiaga de constar en los libros que D. Nicolás Quiñones Cabezudo embarcó para España en el vapor correo *Alfonso XII* el 15 de agosto de 1892, no pudiendo expresar en qué vapor regresó por carecer de anotaciones detalladas, por traer los vapores sólo·simples relaciones del pasaje, que no ha sido posible encontrar; declarando tres testigos que actor y demandado llevaban cuentas, enviando aquél efectos de maquinaria y pagando el otro sin plazo fijo, haciendo éste varias reclamaciones por descomposición de algunos efectos devolviendo algunas piezas, y de esto hará ocho o diez años, dice un testigo; y los otros dos, que las reclamaciones de las coronas fué ha nueve o diez años, y uno de éstos que lo de la cuenta en aquellos días, declarando otro testigos, que dice es maquinista práctico, por tanto sin título, y que lo era de la hacienda; que ha visto se han roto coronas de las fabricadas por Portilla, teniendo Quiñones que encargalas a Inglaterra; que la rotura de las coronas ocurrió hace unos diez años y la hacienda no tenía coronas ni mazas de repuesto; que el eje de la maza a los tres días de colocado se corrió y tuvo Quiñones que suspender la molienda, quedando caña cortada en la plaza, echándose a perder la mayor parte; que también una bomba funcionó bien y a los ocho meses dejó de funcionar (*) y examinada resultó que las vinazas se habían corrido, notándose que el revestimiento interior no era de bronce; que una pieza de una maza estaba desgastada y a poco de montar la encar-

gada a Portilla se notó se había aflojado, teniendo que desmontarla y arreglarla y que las piezas al recibirse no se reconocían.

"10. *Resultando:* que terminadas las pruedas, los defensores de las partes alegaron lo que estimaron conveniente y al votar la sentencia disintió de la mayoría el Juez Asociado Don José Tous Soto.

"*Siendo* Ponente en este pleito el Juez Presidente Don Juan Morera Martínez.

"1. *Considerando:* que aceptando el demandado al contestar la demanda sostenía cuenta con Portilla, quien le proveía de efectos de herrería, útiles de maquinaria, accesorios y reparaciones mecánicas a cambio de abonos en efectivo, todo ello implica el reconocimiento de la cuenta por el actor presentada, y por tanto el deber de impugnar concretamente las partidas que pudieran contener engaño o error para que sobre ellas versara la discusión y prueba en esos dos períodos del juicio.

"2. *Considerando:* que los errores de cuentas no pueden impugnarse por medio de alegaciones vagas, sino determinando cuál es la cifra equivocada o cual es el engaño padecido, y que producidas por el actor al demandado a su debido tiempo las cuentas, fueron a instancia de aquél presentadas por el defensor del demandado, quedando liquidadas y cerradas hasta 1894 inclusives, los 1,000 pesos que Quiñones abonó, según éste y el demandante han confesado en el juicio, siendo nueva por lo tanto la del 95 al 98.

"3. *Considerando:* que las reclamaciones por el demandado hechas, según sus mismos testigos, se refieren a las de 9 o 10 años antes, ajenas por lo tanto al saldo de la cuenta que se reclama y comprendidas en la transacción o convenio, por actor y demandado confesada, que cerró la cuenta de 1894 sin que sea apreciable, según dicha prueba y la pericial practicada, la referente a 1896 por una maza y ajustar el eje, porque no habiéndola montado Portilla, ni mecánico alguno, y sucedido el percance a los tres días de colocada, no puede exigírsele al actor responsabilidad alguna en ese caso y los (*) demás idénticos, por no resultar de dicha prueba quepa y pueda exigírsele, dadas dichas circunstancias y consideraciones.

"4. *Considerando:* que en la cuenta objeto de la demanda no sólo constan detallados todos los cargos, partida por partida, si que los abonos, devoluciones y rebajas, siendo esos abonos de 1896, 1897 y 1898, arrojando el saldo reclamando de $1,652.43 y envolviendo ese reclamo una acción por efectos vendidos y entregados y por el balance no pagado del precio de los mismos, las vagas y evasivas con-

testaciones del demandado, respecto a la entrega y aceptación de los efectos vendidos, su valor razonable y la falta de pago, no son suficientes para absolverle ni fundar su reconvención, mientras que las pruebas de que antes se ha hecho mérito y especialmente sus cartas traídas a los autos que han sido identificadas, no dejan duda alguna respecto de la certeza de aquellos tres extremos esenciales, máxime estando acreditado que recibió oportunamente las cuentas detalladas, y a pesar del tiempo transcurrido, jamás impugnó específicamente sus partidas.

"5. *Considerando:* que incurren en mora los obligados a entregar o hacer alguna cosa desde que se les exija judicial o extrajudicialmente el cumplimiento de su obligación, incurriendo por mora en el pago de los intereses convenidos o en el legal.

"*Vistos* los artículos 1067, 1075, 1403, 1404, 1500 y 1501 del Código Civil y 326 del Código de Comercio.

"*Fallamos:* que debemos declarar y declaramos con lugar la demanda deducida por la Sociedad Sobrinos de Portilla contra Don Nicolás Quiñones Cabezudo, y, desestimando la reconvención condenamos al demandado pague al demandante los 1,652 pesos 43 centavos del saldo de su cuenta, o su equivalente en oro americano, con los intereses al tipo legal desde la fecha en que se le citó para contestar la demanda y en las costas.

"*Así* por esta nuestra sentencia, definitivamente juzgando, lo pronunciamos, mandamos y firmamos: Juan Morera Martínez, Frank H. Richmond y José Tous Soto."

*Resultando:* que notificada dicha sentencia a dicho Nicolás Quiñones Cabezudo, interpuso contra ella recurso de apelación, que fué admitido, ordenándose que se remitieran los autos a este tribunal, previa citación y emplazamiento de las partes por el término legal, y personadas éstas, se le (*) dió la tramitación correspondiente, habiéndose señalado día para la vista, en la que los abogados de las respectivas partes alegaron lo conducente a sus respectivas pretensiones.

Abogado del apelante: *Sr. López Landrón.*

Abogados del apelado: *Sres. Cuevillas* y *Texidor.*

EL JUEZ ASOCIADO SR. SULZBACHER, después de exponer los hechos anteriores, emitió la opinión del tribunal.

*Aceptando* los fundamentos de hecho y de derecho de la sentencia apelada.

*Vistas* las disposiciones legales que en la misma se citan.

*Fallamos:* que debemos confirmar y confirmamos la sentencia que en 4 de abril de 1903, dictó la Corte de Distrito de San Juan, con las costas a cargo del apelante, y devuélvanse los autos con la certificación correspondiente.

Jueces concurrentes: Sres. Presidente Quiñones y Asociados Hernández, Figueras y MacLeary.